Mae Bowen
Rachel Hankey
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
PO Box 7611
Washington, D.C. 20044
202-532-3345
Email: mae.bowen@usdoj.gov
202-532-5506
Email: Rachel.hankey@usdoj.gov

Heather Gange
Senior Attorney
Environmental Defense Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
202-532-3157
Email: heather.gange@usdoj.gov

Heather Carney Costanzo
Assistant United States Attorney
United States Attorney's Office
District of New Jersey
401 Market Street
P.O. Box 2098
Camden, NJ 08101
Phone: (856) 757-5031
E-mail: heather.costanzo@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

UNITED STATES OF AMERICA,                                  )
NEW JERSEY DEPARTMENT OF ENVIRONMENTAL )
PROTECTION, THE COMMISSIONER OF THE          )
NEW JERSEY DEPARTMENT OF ENVIRONMENTAL )
PROTECTION, and ADMINISTRATOR, NEW JERSEY )
SPILL COMPENSATION FUND,                                  )

|  |  |  |
|---|---|---|
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. Action No.  3:24-cv-8946 |
| | ) | |
| NL INDUSTRIES, INC., | ) | |
| OLD BRIDGE TOWNSHIP, NEW JERSEY, | ) | |
| ATLANTIC BATTERY CO., INC., ATLANTIC | ) | |
| RICHFIELD CO., BIXON LIQUIDATION  CORP., | ) | |
| C&D TECHNOLOGIES, INC., CLARIOS, LLC, | ) | |
| CROWN BATTERY MANUFACTURING CO., | ) | |
| EAST PENN MANUFACTURING CO., E.I. DU PONT | ) | |
| DE NEMOURS AND CO. (N/K/A EIDP, INC.), | ) | |
| ENERSYS DELAWARE, INC., FMC CORP., | ) | |
| GOULD ELECTRONICS INC., HONEYWELL | ) | |
| INTERNATIONAL, INC., JOE KRENTZMAN & | ) | |
| SON, INC., JOHNSON CONTROLS, INC., RAE | ) | |
| STORAGE BATTERY CO., RIO TINTO | ) | |
| MINERALS INC., RIO TINTO METALS  LIMITED, | ) | |
| RIO TINTO PLC, TIFFEN ACQUISITION CORP., | ) | |
| TIFFEN CO., LLC, WIMCO METALS, INC., | ) | |
| YUASA BATTERY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

The United States of America, by authority of the Attorney General of the

United States and through the undersigned attorneys, and acting at the request of

the Administrator of the United States Environmental Protection Agency ("EPA"),

the United States Department of the Interior ("DOI"), and the National Oceanic

and Atmospheric Administration ("NOAA") files this complaint in which the New

Jersey Department of Environmental Protection ("NJDEP"), the Commissioner of

the New Jersey Department of Environmental Protection ("Commissioner"), and

the Administrator of the New Jersey Spill Compensation Fund ("Administrator")
(collectively, the "State Plaintiffs"), join and allege as follows:

<u>STATEMENT OF THE CASE</u>

1.    This is a civil action against NL Industries, Inc. ("NL"), Old Bridge
Township, New Jersey ("Old Bridge"), Atlantic Battery Co., Inc., Atlantic
Richfield Co., Bixon Liquidation Corp., C&D Technologies, Inc., Clarios, LLC,
Crown Battery Manufacturing Co., East Penn Manufacturing Co., EnerSys
Delaware, Inc., E. I. du Pont de Nemours and Co., (n/k/a EIDP, Inc.), FMC Corp.,
Gould Electronics Inc., Honeywell International, Inc., Joe Krentzman & Son, Inc.,
Johnson Controls, Inc., Rae Storage Battery Co., Rio Tinto Minerals Inc., Rio
Tinto Metals Limited, Rio Tinto plc, Tiffen Acquisition Corp., Tiffen Co., LLC,
Wimco Metals, Inc., and Yuasa Battery, Inc., (collectively "Defendants"), under
Sections 107(a) and 113 of the Comprehensive Environmental Response,
Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9607(a) and
9613 ("CERCLA"), the Spill Compensation and Control Act (the "Spill Act"),
N.J.S.A. 58:10-23.11 through -23.24, the Water Pollution Control Act (the
"WPCA"), N.J.S.A. 58:10A-1 through -20, and the Solid Waste Management Act,
N.J.S.A. 13:1E-1 through –227, seeking the recovery of unreimbursed response
costs incurred, and to be incurred, and recovery of natural resource damages, in
response to releases and threatened releases of hazardous substances into the
environment at the Raritan Bay Slag Superfund Site in Old Bridge Township and

the Borough of Sayreville, New Jersey ("Site"). The Plaintiffs also seek a declaratory judgment against Defendants under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), with respect to liability for response costs claimed in a subsequent proceeding.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this action and over the Defendants under 28 U.S.C. §§ 1331, 1345, 1355 and 1367(a) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b).

3.    Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the threatened or actual releases of hazardous substances that give rise to the claims in this Complaint occurred in this District, and because the Site is located in this District.

## UNITED STATES PLAINTIFFS

4.    The United States Department of Justice has authority to bring this action on behalf of EPA, DOI, and NOAA, pursuant to 28 U.S.C. §§ 516 and 519; Section 107 and 113 of CERCLA, 42 U.S.C. § 9607 and 9613, and 40 C.F.R. § 300.600.

## STATE PLAINTIFFS

5.    NJDEP is a principal department within the Executive Branch of the New Jersey State government, vested with the authority to conserve and protect

natural resources, protect the environment, prevent pollution, and protect the public health and safety. N.J.S.A. 13:1D-9.

6.     Pursuant to the Public Trust Doctrine, the State is the trustee of all natural resources within its jurisdiction for the benefit of its citizens, and NJDEP is vested with the authority to protect this public trust and to seek compensation for any injury to the natural resources of this State. N.J.S.A. 58:10-23.11a; N.J.S.A. 13:1D-150(b) and Section 107 and 113 of CERCLA, 42 U.S.C. § 9607 and 9613. NJDEP brings this action and has standing to sue to protect the sovereign and quasi-sovereign interests of the State, including public resources and the environment, in its parens patriae authority as sovereign and protector of its citizens and territory. Here, the State Plaintiffs represent interests distinct from those of any particular private party, seeking natural resource damages and related environmental remedies affecting a substantial population of New Jersey residents.

<u>DEFENDANTS</u>

7.     NL is a domestic business corporation organized and existing under the laws of the State of New Jersey and having an office for the transaction of business located at Three Lincoln Center, 5430 LBJ Freeway, Suite 1700, Dallas, Texas 75244.

8.     Old Bridge is a municipal corporation in Middlesex County, New Jersey, maintaining offices located at 1 Old Bridge Plaza, Old Bridge, New Jersey 08857.

9.     Atlantic Battery Co., Inc. is a corporation organized and existing under the laws of the State of Massachusetts and having an office for the transaction of business located at 80 Elm Street, Watertown, Massachusetts 02472.

10.     Atlantic Richfield Co. is a company organized and existing under the laws of the State of Delaware and having an office for the transaction of business located at 501 Westlake Park Boulevard, Houston, Texas 77079. Upon information and belief, Atlantic Richfield Co. is a successor in interest to the Anaconda Co. ("Anaconda") and International Smelting and Refining Co. ("International Smelting").

11.     Bixon Liquidation Corp. is a corporation organized and existing under the laws of the State of Connecticut and having an office for the transaction of business located at 808 Washington Avenue, New Haven, Connecticut 06519.

12.     C&D Technologies, Inc. is a corporation organized and existing under the laws of the State of Delaware and having an office for the transaction of business located at 1400 Union Meeting Road, Blue Bell, Pennsylvania 19422. Upon information and belief, C&D Technologies, Inc. is a successor in interest to C&D Batteries.

13.     Clarios, LLC is a company organized and existing under the laws of the State of Wisconsin and having an office for the transaction of business at 5757 N. Green Bay Ave., Glendale, Wisconsin 53209. Upon information and belief, Clarios, LLC, was formerly known as the Johnson Controls Battery Group, LLC,

and is a successor in interest to Globe-Union, Inc.

14.    Crown Battery Manufacturing Co. is a company organized and existing under the laws of the State of Ohio with an office for the transaction of business located at 1445 Majestic Drive, Fremont, Ohio 43420.

15.    East Penn Manufacturing Co. is a company organized and existing under the laws of the Commonwealth of Pennsylvania and having an office for the transaction of business located at Deka Road, Lyon Station, Pennsylvania 19536.

16.    EnerSys Delaware, Inc. is a corporation organized and existing under the laws of the State of Delaware and having an office for the transaction of business located at 2366 Bernville Road, Reading, Pennsylvania 19605. Upon information and belief, EnerSys Delaware, Inc. is a successor in interest to Electric Storage Battery Co.

17.    E. I. du Pont de Nemours and Co., also known as EIDP, Inc., is a corporation organized and existing under the laws of the State of Delaware and having an office for the transaction of business located at 1007 Market Street, Wilmington, Delaware 19898.

18.    FMC Corp. is a company organized and existing under the laws of the State of Delaware and having an office for the transaction of business at 2929 Walnut Street, Philadelphia, PA 19104.

19.    Gould Electronics Inc. is a corporation organized and existing under the laws of the State of Ohio and having an office for the transaction of business

located at 2555 W. Fairview St., Suite 103, Chandler, Arizona 85224. Upon Information and belief, Gould Electronics Inc. is a successor in interest to Gould, Inc.

20.    Honeywell International, Inc. is a corporation organized and existing under the laws of the State of Delaware and having an office for the transaction of business located at 101 Columbia Road, Morristown, New Jersey 07960. Upon information and belief, Honeywell International, Inc. is a successor in interest to C&D Batteries and Prestolite Batteries, Division of Eltra Corp.

21.    Joe Krentzman & Son, Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and having an office for the transaction of business located at 3175 Black Maitland Road, Lewistown, Pennsylvania 17044.

22.    Johnson Controls, Inc. is a corporation organized and existing under the laws of the State of Wisconsin and having an office for the transaction of business located at 5757 N. Green Bay Avenue, Glendale, Wisconsin 53201. Upon information and belief, Johnson Controls, Inc. is a successor in interest to Globe-Union, Inc.

23.    RAE Storage Battery Co. is a company organized and existing under the laws of the State of Connecticut and having an office for the transaction of business located at 51 Deming Road, Berlin, Connecticut 06037.

24.    Rio Tinto Minerals Inc. is a corporation organized and existing under

the laws of the State of Utah and having an office for the transaction of business located at 4700 Daybreak Parkway, South Jordan, Utah 84009. Upon information and belief, Rio Tinto Minerals Inc. is a successor in interest to Capper Pass & Son Ltd.

25.    Rio Tinto Metals Limited is a company organized and existing under the laws of England and Wales and having an office for the transaction of business at 6 St James's Square, London, Sw1Y 4AD, United Kingdom. Upon information and belief, Rio Tinto Metals Limited is a successor in interest to Capper Pass & Son Ltd.

26.    Rio Tinto plc is a company organized and existing under the laws of England and Wales and having an office for the transaction of business at 6 St James's Square, London, SW1Y 4AD, United Kingdom. Upon information and belief, Rio Tinto plc is a successor in interest to Capper Pass & Son Ltd.

27.    Tiffen Acquisition Corp. is a corporation organized and existing under the laws of the State of Delaware and having an office for the transaction of business located at 90 Oser Avenue, Hauppauge, NY 11788.

28.    Tiffen Co., LLC is a company organized and existing under the laws of the State of Delaware and having an office for the transaction of business located at 90 Oser Avenue, Hauppauge, New York 11788.

29.    Wimco Metals, Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and having an office for the

transaction of business located at 401 Penn Avenue, Pittsburgh, Pennsylvania 15221.

30.    Yuasa Battery, Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and having an office for the transaction of business located at 2901 Montrose Avenue, Laureldale, Pennsylvania 19605. Upon information and belief, Yuasa Battery, Inc. is a successor in interest to Electric Storage Battery Co.

31.    Each Defendant is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21) and N.J.S.A 58:10-23.11b.

<u>FACTS</u>

32.    The Site is located in a recreational area on the shore of Raritan Bay, in the eastern part of Old Bridge Township within the Laurence Harbor section of Middlesex County, New Jersey. A portion of the western end of the Site is located in the Borough of Sayreville. The Site is bordered to the north by Raritan Bay and to the east, west, and south by residential properties. The Site is contaminated with lead furnace slag, battery casings, and other waste from lead smelting activities. Lead is the primary contaminant of concern at the Site.

33.    The Site has three sectors: the "Margaret's Creek Sector," which consists of undeveloped wetlands at the eastern side of the Site; the "Seawall Sector," which includes a 2,200-foot Seawall along the shoreline of Raritan Bay in Old Bridge Township; and the "Jetty Sector," which contains the 800-foot-long

Western Jetty of the Cheesequake Creek Inlet and the adjoining waterfront area in Sayreville Borough. These areas contain contaminated soil and sediment in addition to lead-contaminated waste such as slag and battery casings.

34.    NL purchased the United Lead Co. in 1928 and assumed direct operation of a secondary lead smelting facility at 1050 State Street in Perth Amboy, New Jersey (the "Perth Amboy facility"). NL's smelting operations at the Perth Amboy facility continued through 1975.

35.    NL's Perth Amboy facility extracted and processed lead from various lead-containing materials, including but not limited to, scrap batteries, scrap metal, dross, lead oxides and mud, and lead battery plates removed from lead/acid storage batteries. This process generated furnace slag that contained lead and other metals, as well as battery casings that had lead and other metals adhering to them.

36.    NL hired Liberty Trucking Co. ("Liberty Trucking") of Fords, New Jersey, to dispose of waste from NL's Perth Amboy lead smelting operations, including furnace slag and battery casings.

37.    Lead, chromium, antimony, arsenic, and other substances contained in the waste sent by NL for disposal are "hazardous substances" as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14) and N.J.S.A. 58:10-23.11b.

38.    Liberty Trucking transported waste from NL's Perth Amboy facility to its affiliated property on Route 35 in Old Bridge Township, New Jersey.

39.    Charles Ludwig was President of and owned Liberty Trucking. Mr.

11

Ludwig also was President of and owned the following companies: Ramble Realty Co., Inc. and Twin Anchors Marine Basin, Inc.

40.    At the time of disposal of NL's lead waste materials, Ramble Realty Co., Inc. owned a parcel along Route 35 in Sayreville, New Jersey, at the base of the Western Jetty at the Cheesequake Creek Inlet that is now part of the Jetty Sector of the Site.

41.    At the time of disposal of NL's lead waste materials, Twin Anchors Marine Basin, Inc. owned the parcels on Route 35 in Old Bridge Township, New Jersey, that are now the portion of the Site referred to as the Margaret's Creek Sector.

42.    No other property on Route 35 in Old Bridge Township was owned by Liberty Trucking or its affiliates at the relevant time.

43.    NL's waste from lead smelting activities, including furnace slag and battery casings, were brought by Liberty Trucking to the Margaret's Creek Sector of the Site.

44.    Liberty Trucking also disposed of waste from lead smelting activities, including slag and battery casings from NL, in the Seawall Sector of the Site.

45.    The Western Jetty at Cheesequake Creek Inlet is part of a federally authorized navigation project by the United States Army Corps of Engineers ("USACE") and has been in existence since the USACE constructed it in the late nineteenth century.

46.     Upon information and belief, in or around 1967, Charles Ludwig disposed of NL's lead waste, including lead furnace slag and battery casings, on the Western Jetty and the adjacent land area which was owned by Ludwig through the Ramble Realty Co., Inc.

47.     Upon information and belief, Defendants (or their predecessors) Atlantic Battery Co., Inc., Bixon Liquidation Corp., C&D Technologies, Inc. (as successor to C&D Batteries), Clarios, LLC (as successor to Globe-Union, Inc.), Crown Battery Manufacturing Co., East Penn Manufacturing Co., EnerSys Delaware, Inc. (as successor to Electric Storage Battery Co.), EIDP, Inc. (as successor to E. I. du Pont de Nemours and Co.), FMC Corporation, Gould Electronics Inc. (as successor to Gould, Inc.), Honeywell International, Inc. (as successor to C&D Batteries and Presolite Batteries), Joe Krentzman & Son, Inc., Johnson Controls, Inc. (as successor to Globe-Union, Inc.), Rae Storage Battery Co., Rio Tinto Minerals Inc. (as successor Capper Pass & Son Ltd.), Rio Tinto Metals Limited (as successor Capper Pass & Son Ltd.), Rio Tinto plc (as successor Capper Pass & Son Ltd.), Tiffen Acquisition Corp., Tiffen Co., LLC, Wimco Metals, Inc., and Yuasa Battery, Inc., arranged for disposal of waste materials, including hazardous substances within the meaning of Section 101(14) of CERCLA, and N.J.S.A. 58:10-23.11b, at NL's Perth Amboy facility which ultimately was disposed of at the Site as described above.

48.     Upon information and belief, Atlantic Richfield Co., is a successor in

interest to Anaconda and International Smelting, which owned and operated Raritan Copper Works, a facility from which waste materials were removed by Liberty Trucking and transported to the Site.  Atlantic Richfield Co.'s predecessors Anaconda and International Smelting arranged for the disposal of waste material containing "hazardous substances" at the Site within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a)(3) and N.J.S.A. 58:10-23.11b.

49.    On May 11, 1983, Old Bridge (at the time known as Madison Township) purchased the property on which Seawall construction and filling activities had taken place.

50.    At the time of its purchase in 1983, Old Bridge had knowledge that lead waste had been deposited at the property on which the Seawall was located.

<u>RESPONSE ACTIONS IN CONNECTION WITH THE SITE</u>

51.    Elevated levels of lead, antimony, arsenic, chromium, and copper were identified by the NJDEP in the soil along the Seawall in 2007 and at the edge of the beach near the western end of the Seawall.

52.    In 2008, EPA and NJDEP analytical results identified elevated levels of lead and other heavy metals in the soils, sediment and surface water in and around both the Seawall in Laurence Harbor and the Western Jetty at the Cheesequake Creek Inlet.

53.    At EPA's request, the New Jersey Department of Health and Senior Services, in cooperation with the federal Agency for Toxic Substances and Disease

14

Registry ("ATSDR"), evaluated analytical data from the samples collected at the Site. They concluded that, due to the elevated lead levels, a public health hazard exists at the Seawall in Laurence Harbor, the beach adjacent to and west of the Seawall, and the Western Jetty at the Cheesequake Creek Inlet, including the waterfront area immediately west of the inlet.

54.     In March 2009, the 47-acre property that is now known as the Margaret's Creek Sector was also included in the overall Site when battery casings, furnace slag, and soil and sediment contamination were discovered there.

55.     Because a public health hazard existed, in 2009 EPA conducted a removal action to restrict access to these areas by installing permanent fences around the beach, jetty, and Margaret's Creek and posting signs to warn against swimming, fishing, and sunbathing. EPA also conducted public outreach to inform residents and those using these areas of the existing health hazard.

56.     On November 4, 2009, the Site was placed on the National Priorities List.

57.     EPA conducted Remedial Investigation ("RI") field activities from September 2010 through June 2011 at the Site.

58.     On February 9, 2012, EPA sent a letter to NL notifying NL that EPA believes NL is potentially liable with respect to the Site under CERCLA.

59.     On February 21, 2012, EPA sent NL a "Demand for Reimbursement of Costs Relating to the Raritan Bay Slag Superfund Site."

60.    On May 23, 2013, EPA issued a Record of Decision ("ROD") in which EPA selected a remedy for the Site. Under the selected remedy, slag, battery casings, and contaminated soils and sediment above remediation levels are to be excavated and/or dredged and disposed of at appropriate off-site facilities. The ROD indicated that there were three locations at the Site where slag and battery casings, and associated waste that acts as a source of lead, had been deposited: the Seawall Sector, the Jetty Sector, and the Margaret's Creek Sector.

61.    The ROD set forth EPA's estimate that there are approximately 11,000 cubic yards of slag and other source material at the Site, and 80,000 cubic yards of additional contaminated soils and sediments that contain lead above cleanup levels.

62.    The presence of slag and battery casings have produced adverse ecological effects to natural resources such as aquatic, terrestrial and avian species. The continued presence of contaminated soil, sediment, and surface water pose further risk to natural resources and their services.

63.    In September 2016, EPA commenced the remedial action for the Margaret's Creek Sector using federal monies. EPA finalized the Remedial Action Work Plan for that Sector in June 2017 and completed remediation in September 2018.

64.    On February 7, 2017, EPA sent a letter to Old Bridge notifying it that EPA had determined that Old Bridge may be liable under CERCLA with respect to

16

the Site.

65.    EPA initiated design work for the Seawall Sector portion of the remedy in May 2017 and conducted sampling in July 2018.

66.    As of May 31, 2023, the United States had incurred approximately $32,268,119 in unreimbursed response costs at the Site. EPA expects to incur future response costs at the Site as well.

<u>FIRST CLAIM FOR RELIEF – Response Costs under Section 107 of CERCLA</u>

67.    The allegations contained in paragraphs 1-66 are realleged and incorporated herein by reference.

68.    The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

69.    The Site contains hazardous substances, including lead, within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

70.    There has been and continues to be a release or a threatened release of hazardous substances into the environment at and from the Site within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

71.    As a result of the release or threatened release of the hazardous substances at and from the Site, the Plaintiffs have incurred, and continue to incur, "response costs," as defined in Section 101(25) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(25) and 9607(a), for actions taken in response to the release or threatened

release of hazardous substances at and from the Site.

72.    The response actions taken by the Plaintiffs, and the resulting response costs incurred by the Plaintiffs, are not inconsistent with the National Contingency Plan, as set forth at 40 C.F.R. Part 300.

73.    Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part that:

> (1)    the owner and operator of a vessel or a facility,
>
> . . .
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, . . .
>
> . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for –
>
>> (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan . . . .

74.    Defendants (or their predecessors) NL, Atlantic Battery Co., Inc., Atlantic Richfield Co., Bixon Liquidation Corp., C&D Technologies, Inc. (as successor to C&D Batteries), Clarios, LLC (as successor to Globe-Union, Inc.),

Crown Battery Manufacturing Co., East Penn Manufacturing Co., EnerSys Delaware, Inc. (as successor to Electric Storage Battery Co.), EIDP, Inc. (as successor to E. I. DuPont de Nemours and Co.), FMC Corporation, Gould Electronics, Inc. (as successor to Gould, Inc.), Honeywell International, Inc. (as successor to C&D Batteries and Prestolite Batteries), Joe Krentzman & Son, Inc., Johnson Controls, Inc. (as successor to Globe-Union, Inc.), Rae Storage Battery Co., Tiffen Acquisition Corp., Tiffen Co., LLC, Rio Tinto Minerals Inc. (as successor Capper Pass & Son Ltd.), Rio Tinto Metals Limited (as successor Capper Pass & Son Ltd.), Rio Tinto plc (as successor Capper Pass & Son Ltd.), Wimco Metals, Inc., and Yuasa Battery, Inc., arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by NL at the Site, within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

75.    Old Bridge is a person who is the "owner" of a "facility" from which there is a "release," or a threatened "release" of "hazardous substances" which caused the incurrence of "response" costs within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

76.    Defendants are liable to the Plaintiffs for all response costs incurred by the United States at the Site, including prejudgment interest.

<u>SECOND CLAIM FOR RELIEF- Natural Resource Damages under Section 107 of CERCLA</u>

77. The allegations contained in paragraphs 1 – 76 are realleged and incorporated herein by reference.

78. As outlined in Paragraphs 74-76, each Defendant is liable to the Plaintiffs under Section 107(a) of CERCLA, 42 U.S.C. §§ 9607(a).

79. Pursuant to Section 107(f)(2) of CERCLA, the National Contingency Plan regulations at 40 C.F.R. Part 300, subpart G, and further designations and delegations, NOAA, DOI, and NJDEP (collectively the "Trustees" and each individually a "Trustee") serve as trustees of natural resources that have been or may be injured, destroyed, or lost as a result of the releases of hazardous substances described in this complaint. The Trustees' responsibilities include assessing and recovering damages due to those injuries and using the recovered damages to restore, replace, rehabilitate, or acquire the equivalent of the injured natural resources and associated natural resource services.

80. "Natural resources" includes land, fish, wildlife biota, air, water, ground water, [and] drinking water supplies. 42 U.S.C. § 9601.

81. The Trustees initiated a natural resource damages assessment ("NRDA") in accordance with the regulations found at 43 C.F.R. Part 11, and determined that there has been injury to, destruction of, or loss resulting from releases of hazardous substance at the Site, both to ecological resources and human use of those resources.

82. Each Trustee has incurred assessment costs in connection with the

NRDA for the Site.

83.    Defendants are therefore liable for damages for all injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.

## THIRD CLAIM FOR RELIEF - Declaratory Judgment under Section 113 of CERCLA

84.    The allegations contained in paragraphs 1 – 83 are realleged and incorporated herein by reference.

85.    Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides, in part:

> In any such action . . . [for recovery of the costs or damages under Section 107 of CERCLA, 42 U.S.C. § 9607], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

86.    The Plaintiffs will incur additional response costs at or in connection with the Site in the future and natural resource damages continue to occur.

87.    The Plaintiffs are entitled to a declaratory judgment on liability under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), with respect to response costs and natural resource damages.

## FOURTH CLAIM FOR RELIEF – State claims under the Spill Act

88.    The allegations contained in paragraphs 1 –87 are realleged and incorporated herein by reference.

21

89.     The New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-2.3.11 through -23.24 ("Spill Act"), imposes strict, joint and several liability, without regard to fault, on persons who have discharged a hazardous substance or are in any way responsible for a discharged hazardous substance.

90.     The State has incurred, and will continue to incur, costs and damages at the Site that are "cleanup and removal costs" within the meaning of N.J.S.A. 58:10-23.11b.

91.     The "natural resources" of this State are all land, fish, shellfish, wildlife, biota, air, water and other such resources owned, managed, held in trust or otherwise controlled by the State. N.J.S.A. 58:10-23.11b.

92.     The natural resources of this State, including the waters of the State, have been injured as a result of discharge of hazardous substances at the Site.

93.     The State has incurred, and will likely continue to incur, costs and damages, including lost value and reasonable assessment costs, for any natural resource of this State that has been, or may be, injured as a result of the discharge of hazardous substances at the Site.

94.     Defendants, as a discharger of "hazardous substances" or a person in any way responsible for the "hazardous substances" "discharged" at the Site as defined in N.J.S.A. 58:10-23.11b, are liable, without regard to fault, for all cleanup and removal costs, and damages, including lost value and reasonable assessment costs, to assess, mitigate, restore, or replace, any natural resource of this State that

22

has been, or may be, injured, that the State has incurred and will incur as a result of a hazardous substances discharge. N.J.S.A. 58:10-23.11g.(c).

<u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiff United States of America and the State Plaintiffs requests that this Court:

a)    Enter judgment in favor of the Plaintiffs, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), as well as the State Plaintiffs under N.J.S.A 58:10-23.11gc., holding Defendants jointly and severally liable for all unreimbursed response costs and natural resource damages incurred by the Plaintiffs regarding the Site, including interest;

b)    Enter a declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), against Defendants on liability for response costs that will be binding in any subsequent action or subsequent action or actions to recover further response costs;

c)    Enter a declaratory judgment, under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), against Defendants on liability for natural resource damages that will be binding in any subsequent action or actions to recover further natural resource damages at the Site;

d)     Order Defendants to reimburse the State Plaintiffs, without regard to fault, for all cleanup and removal costs and damages, including lost value and reasonable assessment costs, that the State has incurred for any natural resource of

this State injured as a result of the discharge of hazardous substances at the Site,

with applicable interest;

      e)     Award the United States and State Plaintiffs their costs for this action;

and

      f)     Grant such other and further relief as the Court deems just and proper.

            Respectfully Submitted,

            ON BEHALF OF THE UNITED STATES

            Todd Kim
            Assistant Attorney General
            Environment and Natural Resources
            Division
            United States Department of Justice

Date: 09/04/2024          s/ Mae Bowen
            Mae Bowen
            Rachel Hankey
            Trial Attorneys
            Environmental Enforcement Section
            Environment and Natural Resources
            Division
            United States Department of Justice
            P.O. Box 7611
            Washington, D.C. 20044
            202-532-3345
            Email: mae.bowen@usdoj.gov
            202-532-5506
            Email: Rachel.hankey@usdoj.gov

            Philip R. Sellinger
            United States Attorney
            District of New Jersey

24

s/ Heather Carney Costanzo
Heather Carney Costanzo
Assistant United States Attorney
United States Attorney's Office
District of New Jersey
401 Market Street
P.O. Box 2098
Camden, NJ 08101
Phone: (856) 757-5031
E-mail: heather.costanzo@usdoj.gov

Of Counsel:

Damaris Urdaz
Olga Pappas
Brian Nguyen
United States Environmental Protection Agency
Region 2
290 Broadway
New York, NY 10007


ON BEHALF OF THE STATE

Matthew J. Platkin
Attorney General of New Jersey

s/ Richard F. Engel
By: Richard F. Engel
Deputy Attorney General
New Jersey Department of Law & Public
Safety
Division of Law
R.J. Hughes Justice Complex
25 Market St., P.O. Box 093
Trenton, NJ 08625-0093

25

609-376-2761
Richard.Engel@law.njoag.gov